IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LUCILE JOHNSON,**<br>           **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **DEPENDABILITY COMPANY, L.L.C.,**<br>**and DEPENDABILITY CO.,**<br>           **Defendants.** | **NO.  15-3355** |

**M E M O R A N D U M**

**DuBois, J.**                                                                                             **March 3, 2016**

**I.     INTRODUCTION**

This case arises from the termination of plaintiff Lucile Johnson's employment as a bus driver with defendants, Dependability Company, LLC, and Dependability Co.  After Johnson notified her employer that she suffers from depression, she claims that she was retaliated against and ultimately fired because of her disability.  Johnson asserts claims for retaliation and discrimination on the basis of disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. §§ 951, et seq.

On October 6, 2015, plaintiff filed a Motion for Entry of Default Judgment Against Defendants, which the Court granted by Order dated November 23, 2015, with judgment to be entered in an amount to be determined by the Court after a hearing to assess damages.  An assessment of damages hearing was held on January 22, 2016.  Based on the following Findings of Fact and Conclusions of Law, judgment is entered in favor of plaintiff and against defendants, jointly and severally, in the total amount of $22,520.22, consisting of the following: back pay in the sum of $2,800.06, plus $59.60 in prejudgment interest, front pay in the sum of $9,660.56, and

compensatory damages in the sum of $10,000, plus interest at the lawful rate from the date of this Memorandum and Order.

## II. PROCEDURAL BACKGROUND

On June 16, 2015, plaintiff filed the Complaint in this action, alleging that she had been terminated from her employment with defendant because of her disability in violation of the ADA and the PHRA. Compl., ECF No. 1. Defendants were personally served with a summons and the Complaint on July 21, 2015. *See* Summons, ECF No. 6. Defendants did not respond to the Complaint within 21 days of service. By letter dated August 17, 2015, the Court directed defendants to respond on or before September 8, 2015. Ltr. from Milahn V. Hull to Dependability Company, LLC (Aug. 17, 2015), ECF No. 7. Again, defendants did not respond. On September 16, 2015, a default was entered against defendants for failure to appear, plead, or otherwise defend this action.

Plaintiff filed a Motion to Enter Default Judgment Against Defendants on October 6, 2015. ECF No. 9. Defendants did not file a Response to the Motion. By Order dated November 23, 2015, the Court granted the Motion. ECF No. 10. On January 22, 2016, the Court conducted a hearing to assess plaintiff's damages. Notwithstanding notice, defendants did not appear. Following the hearing, plaintiff submitted Proposed Findings of Fact and Conclusions of Law and additional evidence of damages that the Court requested at the hearing. ECF No. 19.

## III. FINDINGS OF FACT

1. Plaintiff, a 50 year-old female, is a homeowner and single parent of two children.

2. Since at least January 10, 2012, plaintiff has been treated for depression by Dr. Eugene Siegel. Plaintiff's depression limits her ability to sleep, focus, and engage in social interactions. Plaintiff takes anti-depressant medication.

3. Plaintiff was employed as a school bus driver by defendants beginning in September 2013.

4. Plaintiff was supervised by defendants' CEO, Gwen Simpkins, and Dispatch Manager, Tonya Dickinson.

5. Plaintiff suffered from depression during her employment with defendants.

6. In spite of her depression, plaintiff was able to perform the functions required by her job as a bus driver with defendants.

7. During her employment with defendants, Simpkins and Dickinson harassed plaintiff. This harassment consisted of suspending plaintiff from work, sending plaintiff home from work, calling her names, and laughing at her.

8. Plaintiff disclosed her depression and the fact that she takes anti-depressant medication to Simpkins and Dickinson.

9. Simpkins and Dickinson continued to harass plaintiff after she disclosed her depression.

10. As a result of the harassment, plaintiff felt humiliated and cried every day. She did not know how to, or who could, address the problem because her manager and defendants' CEO were the source of the harassment.

11. Around April 2014, plaintiff was suspended from work for two days.

12. After serving her two-day suspension, plaintiff returned to work. Around April 14, 2014, defendants terminated plaintiff's employment on the ground that she had "quit" when she failed to report to work during the two days on which she was suspended.

13. Plaintiff did not quit her job.

14. Plaintiff was terminated by defendants around April 14, 2014 because of her disability and her complaints of harassment.

15. As a result of her termination, plaintiff faced additional financial stress in supporting herself and her two children.

16. Plaintiff continued to be treated by Dr. Siegel, who noted in his records that plaintiff's depression was exacerbated by defendants' harassment and by her termination. Dr. Siegel also noted that plaintiff suffered from "acute anxiety," "distress," and "nausea and vomiting," after she was terminated. Pl.'s Proposed Findings of Fact and Conclusions of Law, Ex. F. at Med 0104 (April 30, 2014).

17. Plaintiff's paystubs from her employment with defendants reveals that she worked an average of 13.27 hours per week, and was paid $14.00 per hour, or $185.78 per week.

18. After her termination, plaintiff was unemployed for one week.

19. One week after her termination, plaintiff obtained employment as a bus driver with the Pennsylvania School for the Deaf ("PSD").

20. Plaintiff worked for PSD from about April 21, 2014 until about July 15, 2015, approximately 65 weeks. At PSD, plaintiff worked approximately 12 hours per week, earning $14.80 per hour, or $177.00 per week.

21. Plaintiff's earnings at PSD were $8.78 less per week than her earnings from her employment by defendants.

22. Around July 15, 2015, plaintiff was in an automobile accident that required her to undergo knee surgery and prevented her from continuing to work for PSD.

23. After surgery for injuries sustained in the automobile accident, plaintiff's doctor cleared her to return to work on November 2, 2015.

24.     Since she was medically cleared to return to work, plaintiff has not been able to find employment.  She calls PSD each week but PSD has not had any work available.  Plaintiff has also applied for several other jobs, but still has not found employment.

25.     Plaintiff continues treatment for depression and takes anti-depressant medication.

## IV.    CONCLUSIONS OF LAW

1.     The Court has jurisdiction based on 28 U.S.C. §§ 1331 and 1367.

2.     Defendants' liability under the ADA and PHRA has been established through the issuance of a default pursuant to Federal Rule of Civil Procedure 55.  *See, e.g.*, *Belmonte v. Spitzer*, No. 09-cv-4715, 2010 WL 2195651, at *1 (D.N.J. May 27, 2010) ("Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."); *Transportes Aereos de Angola v. Jet Traders Inv. Corp.*, 624 F. Supp. 264, 266 (D. Del. 1985).

3.     A default judgment, however, "does not establish liability for the amount of damages claimed by the plaintiff." *Belmonte*, 2010 WL 2195651, at *1.  "If the damages are not for a 'sum certain or for a sum which can by computation be made certain,' the 'court may conduct such hearings or order such references as it deems necessary and proper.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted) (quoting Fed. R. Civ. P. 55 (b)(1)-(2)).

### A. Calculation of Back Pay and Prejudgment Interest

1.     Plaintiff is entitled to back pay under the ADA and the PHRA.  42 U.S.C. § 12117 (making recovery for ADA claims identical to recovery in Title VII actions); 43 Pa. Stat. § 962(c) (authorizing court to grant back pay to successful plaintiff).  Back pay is measured as "the difference between the actual wages earned and the wages the individual would have earned

5

in the position that, but for discrimination, the individual would have attained.'" *Gunby v. Pennsylvania Elec. Co.*, 841 F.2d 108, 1119-20 (3d Cir. 1988).

2.        The Court concludes that the appropriate end of the back pay period is the date of the damages hearing, January 22, 2016.

3.        Plaintiff worked for PSD for approximately 65 weeks until she was injured in an automobile accident around July 15, 2015, earning $8.78 less per week at PSD than she would have earned in her job with defendants. Plaintiff was also unemployed for one week before finding employment at PSD, and has been unemployed for approximately eleven weeks[1] since she was cleared to return to work on November 2, 2015. During these twelve weeks, plaintiff earned nothing. The Court concludes that plaintiff is entitled to a back pay award of $2,800.06—her average weekly wage while employed by defendants for a period of twelve weeks, plus the difference between the weekly wages she earned at PSD and the wages she would have earned had she remained employed by defendants for a period of 65 weeks.

4.        Plaintiff also seeks prejudgment interest on her back pay award, which is authorized under the PHRA and ADA. *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 442 (3d Cir. 2009). Federal courts have discretion over whether to award prejudgment interest and the interest rate to be used. *Diaz v. Saucon Valley Manor, Inc.*, No. 12 Civ. 433, 2013 WL 4564300, at *2 (E.D. Pa. Aug. 27, 2013). Federal courts typically use the IRS overpayment rate, which is 3%, or the one-year T-bill rate, which varies over time. *See E.E.O.C. v. Fusaro Corp.*, No. 99 Civ. 3321, 2000 WL 375256, at *6, *9 (E.D. Pa. Apr. 11, 2000).

5.        The Court concludes that prejudgment interest on plaintiff's back pay award is appropriate in this case. Using the IRS overpayment rate of interest, and compounding it daily

---

[1] The period between November 2, 2015 (the date when plaintiff was medically cleared to return to work), and January 22, 2016 (the date of the damages hearing conducted by the Court).

6

from the date plaintiff's Complaint was filed to the date of this Memorandum and Order, the Court concludes that plaintiff is entitled to an award of $59.60 in prejudgment interest.

    **B. Calculation of Front Pay**

    1.    The ADA and PHRA entitle plaintiff to front pay. *Herman v. City of Allentown*, 985 F. Supp. 569, 582 (E.D. Pa. 1997); *Gallo v. John Powell Chevrolet, Inc.*, 779 F. Supp. 804 (M.D. Pa. 1991). Front pay is particularly appropriate in cases where the plaintiff cannot be reinstated in her prior position. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) ("In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement.").

    2.    Plaintiff reported at the hearing on January 22, 2016, that she had been unable to find work. She is therefore entitled to front pay—the wages she would have earned from her employment by defendants, $185.78 per week—for a reasonable period of time. The Court concludes that front pay for a period of one year is reasonable and awards front pay in the amount of $9,660.56.

    **C. Compensatory Damages for Emotional Distress**

    1.    Plaintiff requests and is entitled to compensatory damages for emotional distress under the PHRA. 43 Pa. Stat. § 962(c)(3) (authorizing court to award "any other legal or equitable relief as the court deems appropriate"); *Taylor v. Cent. Pa. Drug & Alcohol Servs. Corp.*, 890 F. Supp. 360, 376 (M.D. Pa. 1995) (holding that plaintiffs were entitled to compensatory damages "under the PHRA for the humiliation, emotional distress and mental anguish which they suffered due to the sexual harassment directed against them").

7

2. Plaintiff's testimony and medical records show that defendants' harassment and treatment of plaintiff exacerbated her depression and caused her increased emotional and psychological suffering.  Specifically, the termination of plaintiff's employment caused her increased financial and emotional stress, anxiety, and physical symptoms, such as nausea and vomiting.  The Court concludes that an award of $10,000 will reasonably compensate plaintiff for these noneconomic damages.

### D. Punitive Damages

1. Plaintiff seeks an award of punitive damages, which are available under the ADA if the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).

2. The Court concludes that an award of punitive damages would not be appropriate in this case.  While defendants harassed plaintiff and terminated her employment because of her disability, the Court does not find that this was the result of malice or reckless indifference.

### V.   CONCLUSION

The Court enters judgment in favor of plaintiff and against defendants, jointly and severally, in the total amount of $22,520.22, consisting of back pay in the sum of $2,800.06, plus $59.60 in prejudgment interest, front pay in the sum of $9,660.56, and compensatory damages in the sum of $10,000, plus interest at the lawful rate from the date of this Memorandum and Order.  The Court declines to award punitive damages.  An appropriate order follows.